NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRIDGET CROSS,

    *Plaintiff*,

    v.

MEGAN BRENNAN, POSTMASTER GENERAL,

    *Defendant.*

Civil Action No. 12-2670

OPINION

**THIS MATTER** comes before the Court by way of Defendant Postmaster General, Megan J. Brennan's[1] ("Defendant") motion for summary judgment against pro se Plaintiff Bridget Cross ("Plaintiff"). Dkt. No. 68. For the reasons stated below, the Court **GRANTS** the motion.

**I.  BACKGROUND**

In this employment suit, Plaintiff claims that she was discriminated against on the basis of her medical condition and disability by her employer in violation of the Rehabilitation Act ("Rehab Act").

Plaintiff is an African-American woman. Am. Compl. ¶ 1, Dkt. No. 22. She is currently employed by the United States Postal Service (the "Postal Service") as a Health and Resource Management ("HRM") Specialist. Id. ¶ 9. Ms. Cross began working for the Postal Service in 1987. Defendant's R. 56 Statement ("Def.'s R.56 Stmt.") ¶ 1, Dkt. No. 68-3.[2]

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Postmaster General Brennan is automatically substituted for former Postmaster General Patrick R. Donahoe as defendant in this suit.

[2] The Court notes that Plaintiff failed to comply with Local Civil Rule 56.1, which requires the non-movant to file a responsive statement of undisputed material facts. Plaintiff did not respond to Def.'s R.56 Stmt. in her Opposition. Dkt. No. 73. Nevertheless, as Plaintiff is proceeding pro

1

**A. Employment as an HRM Specialist in Newark**

In approximately 2001, Ms. Cross began working as an HRM Specialist in the Northern New Jersey District. Id. ¶ 2. In February 2006, Sharon Mortola became the manager of the HRM Department and Plaintiff's direct supervisor. Id. ¶ 3.

As an HRM specialist, Plaintiff's primary responsibility was to process injury compensation claims (also known as worker's compensation or "OWCP" claims) made by Postal Service employees. Id. ¶ 4. In particular, HRM specialists process claims forms, verify eligibility for OWCP compensation, and assist employees with medical restrictions to obtain limited-duty positions. Id. ¶¶ 5-6. As part of her job, Plaintiff frequently walked from her desk to copy and fax machines, approximately 25 feet away. Declaration of Kristin Vassallo ("Vassallo Decl."), Ex. E (Deposition of Bridget Cross ["Cross Dep."]) at 87:13-89:6, Dkt. Nos. 15-16.[3] Plaintiff asserts that up to 70 percent of her time at work was spent walking back and forth to the copying machine. Id. at 90.

In the early 2000s, the HRM Department, including Plaintiff, relocated to 494 Broad Street in Newark ("Broad St."). Def.'s R.56 Stmt. ¶ 7. Broad St. had about six floors, with elevators serving each floor. Id. ¶ 9. Plaintiff worked on the second floor. Id. The building had an employee parking lot with two handicapped parking spaces adjacent to the entrance door. Id. ¶ 10. An elevator located immediately adjacent to the door's entrance took employees to the second floor.

---

se, the Court "may draw the relevant facts underlying the claims from available sources such as the complaint, deposition testimony, the moving litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits." Athill v. Speziale, No. 06-4941, 2009 WL 1874194, at *2 (D.N.J. June 30, 2009) (citing Jordan v. Allgroup Wheaton, 218 F.Supp.2d 643, n.2 (D.N.J. 2002), aff'd 95 F. App'x 462 (3d Cir. 2004)). As such, the Court will take the allegations in Defendant's Statement that have evidentiary support as admitted unless the Court can reasonably identify a material counter-fact from the available sources.

[3] For ease of reference, this Opinion will cite directly to Ms. Cross's deposition transcript.

2

Id. ¶ 10.  Bathrooms were located on each floor.  Id. ¶ 12.  Bathroom doors require manual operation.  Cross Dep. at 101:17-102:4.

### B. 2008 Injury and Subsequent Injury Compensation Claims

In April 2008, Plaintiff injured her left foot in a non-work related accident.  Def.'s R.56 Stmt. ¶ 14.  Ms. Mortola was aware of Plaintiff's medical condition.  Mortola Decl. ¶ 7.  Plaintiff was absent due to this condition from April 2008 to May 2009.  Def.'s R.56 Stmt. ¶ 15. She returned to work "as soon as [she] could walk," on a part-time basis.  Id.  In June 2009, Plaintiff resumed full-time work.  Id. ¶ 16.  Plaintiff continued to experience difficult with her injury, and had hammertoe surgery in October 2009.  Id. ¶ 18.  Following surgery, she returned to work in October/November 2009 with a "shoe boot."  Id. ¶ 19.

Upon her return to work in late 2009, Plaintiff experienced difficulty walking to and from the copying machines.  Cross Dep. at 87:13-89:6.  She also "stayed away from lifting" large tubs of documents.  Id. at 90:25-91:7.  In addition, Plaintiff had trouble walking the distance to the bathrooms and opening the doors.  Id. at 91:12-17.  Although Broad St. had handicapped parking, Plaintiff was only able to secure a handicapped spot less than 20 percent of the time.  Id.  at 99:8-25.

In April 2010, Plaintiff submitted an injury compensation claim to OWCP, stating that her work as an HRM specialist had aggravated her hammertoe condition.  Def.'s R.56 Stmt. ¶ 20.  Ms. Mortola filled out the "Official Supervisor's Report of Occupational Disease" section of Plaintiff's application.  Mortola Decl. ¶ 7.  Ms. Mortola noted that Plaintiff's job as an HRM specialist was a "sedentary position – desk computer work."  Mortola Decl. ¶ 8.  On May 25, 2010, Ms. Mortola sent a follow-up letter regarding Plaintiff's claim, as requested by the Department of Labor.

3

Mortola Decl. ¶ 9. There, she stated that the HRM specialist position "required minimal standing and walking and that the copy/fax/printer was 22.5 feet from Ms. Cross's cubicle." Id.

Although Ms. Cross's OWCP claim was initially denied, her claim was ultimately granted, and Plaintiff received coverage for the entire period that she did not work. Def.'s R.56 Stmt. ¶ 21.

### C. NRP Request

In January 2010, Ms. Mortola emailed the HRM staff asking for volunteers to serve on the NRP Team. Id. ¶ 32. The National Reassessment Program ("NRP") Team was a group of Postal Service employees tasked with evaluating limited-duty positions within the Postal Service. Id. ¶ 28. Plaintiff volunteered. Id. Plaintiff claims that she was then told her schedule would be a poor fit for the NRP Team. Vassallo Decl., Ex. C at US0050. As a result, she withdrew her request to serve on the team. Def.'s R.56 Stmt. ¶ 33. A more junior employee then joined the team. Id. ¶ 34. Plaintiff did not lose any pay as a result of not participating on the NRP Team. Id. ¶ 36. Had she served on the team, Plaintiff would have received the same rate of pay as her HRM specialist position. Id. ¶ 37.

### D. FMLA Training Request

In early 2010,[4] Family Medical Leave Act ("FMLA") training was offered to the entire HRM staff, including Plaintiff. Id. ¶ 22; Mortola Decl. ¶ 22. The purpose of the training was for HRM staff to perform the duties of FMLA coordinators who were scheduled to take leave. Id. Plaintiff asserts that she emailed Ms. Mortola a request for the FMLA training, to which she did not receive a response. Vassallo Decl., Ex. C at US0050; Cross Dep. at 161:21-163:24. Ms. Mortola does not recall receiving such a request. Mortola Decl. ¶ 12. In any event, Plaintiff did

---

[4] It appears that there is a dispute as to when FMLA training was offered. See Mortola Decl. ¶ 22 (FMLA training was offered in January 2010). However, the latest date either parties assert that it was offered was April 2010. Vassallo Decl., Ex. C at US0050.

4

not receive the training. Def.'s R.56 Stmt. ¶ 24. Plaintiff did not lose any pay as a result of not receiving the FMLA training. Id. ¶ 26. Had Plaintiff undergone the FMLA training to cover for FMLA coordinators on leave, she would have received the same rate of pay as her HRM specialist position. Id. ¶ 27.

### E. Cross-Training Request

In June 2010, Plaintiff expressed her interest in cross-training for other departments to Ms. Mortola. Id. ¶ 64. Ms. Mortola suggested training in several departments, including customer service and retail, or for other jobs in HRM. Id. ¶¶ 67-71. Plaintiff stated she was interested in cross-training for the Retail Department, where a position was available at the time. Mortola Decl. ¶ 16. Plaintiff did not ultimately take the opportunity to cross train in Retail or any other department. Id. ¶ 72. Plaintiff did not lose any pay as a result of not receiving the Retail training. Id. ¶ 74. Any detail Plaintiff could have received would have been at the same rate of pay as her HRM Specialist position. Id. ¶ 75.

### F. Kilmer Request

In approximately June of 2010, Ms. Mortola held individual meetings with the entire HRM staff, including Plaintiff, as part of an effort to enhance communication between employees and their supervisors. Id. ¶ 43. During these meetings, Plaintiff requested to work out of the Kilmer facility.[5] Id. ¶ 45. According to Plaintiff, she told Ms. Mortola that Broad St. was not a reasonable accommodation. Cross Dep. at 80:21-24. Ms. Mortola asserts that Plaintiff only explained that Kilmer was closer to her home. Def.'s R.56 Stmt. ¶ 45. Plaintiff explains that she experienced "pain in [her] foot and swelling" during her 45-minute commute to work because she could not

---

[5] Although Plaintiff's memory is unclear, she recalls that she first asked to work out of Kilmer in October or November of 2009, when she returned from her first foot surgery. Cross Dep. at 77:1-8.

5

elevate her foot during the drive.  Cross Dep. at 107:1-6.  Moving to Kilmer would have reduced Plaintiff's commute from 45 minutes to 15 minutes.  Def.'s R.56 Stmt. ¶ 45-47.

Ms. Mortola conveyed the request to her supervisor, Frank Carney, the Manager of Human Resources.  Id. ¶ 48.  Mr. Carney informed Ms. Mortola that there was no office space available in Kilmer at that time.  Id. ¶ 49.  The Central New Jersey District personnel were currently working at Kilmer.  Id. ¶ 50.

Kilmer is a one-floor building with a large employee parking lot and several handicapped parking spaces.  Id. ¶ 54.  The distance between the handicapped parking spaces at Kilmer and its front entrance is about as long as the distance between the non-handicapped parking spaces and the entrance at Broad St.  Id. ¶ 55.  Kilmer's front entrance opened automatically.  Cross Dep. at 55:19-25.  Its bathroom doors were manual.  Id. at 116:18-19.

Allowing Plaintiff to work from Kilmer in 2010 would have greatly hindered the HRM Department's ability to process injury compensation claims.  Def's. R.56 Stmt. ¶ 57.  At the time, no other HRM Specialists worked out of Kilmer, and there was no office space at Kilmer available for HRM use.  Id. ¶¶ 61-62.  At the time, HRM Specialists worked with paper files.  If one Specialist was not available, another would need to access the paper files.  Id. ¶ 59.  Kilmer's administrative offices were refurbished before the Northern New Jersey District moved there from Broad St. in May 2012.  Id. ¶ 63.

**G. EEO Complaint**

On July 8, 2010, Plaintiff contacted a Postal Service Equal Employment Opportunity ("EEO") counselor and alleged that she had experienced discrimination based on race and disability.  Id. ¶ 76.  In the complaint form, Plaintiff alleged that the Postal Service discriminated against her on the following occasions: (1) when Ms. Mortola challenged her injury compensation

6

claims; (2) when her request for a reasonable accommodation to work out of Kilmer was denied; (3) when her request for crossing training was denied; (4) when her request to be part of the NRP Team was denied; (5) when her request for FMLA training was denied; and (6) when she was singled out for criticism. Vassallo Decl., Ex. C at US0050.

On August 23, 2010, the Postal Service's National EEO Investigative Services Office ("NEEOISO") received Plaintiff's EEO Complaint of Discrimination, dated August 19, 2010. Def.'s R.56 Stmt. ¶ 78. In the complaint, Plaintiff checked the boxes for race and disability discrimination, repeating the claims she asserted in her July 8, 2010 complaint form. Id. ¶ 79.

On September 8, 2010, NEEOISO issued a decision accepting two of Plaintiff's claims for investigation: (1) when Plaintiff's cross-training request was ignored, and (2) when Plaintiff was denied a reasonable accommodation to work out of Kilmer. Vassallo Decl., Ex. D at US0066. Pursuant to her options listed in the NEEOISO's decision letter, Plaintiff then filed a hearing request with the Equal Employment Opportunity Commission ("EEOC"). See Vassallo Decl., Ex. D at US00070; Vassallo Decl., Ex. I.

In approximately October 2010, Plaintiff had a second hammertoe surgery, and went out on leave. Def.'s R.56 Stmt. ¶ 81. While Plaintiff was out on injury leave in January 2011, her attorney sent a letter to the Postal Service to resolve the EEO complaint, emphasizing that Plaintiff's main desire was to attain reasonable accommodations. Id. ¶ 82. The Postal Service invited Plaintiff to appear at a District Reasonable Accommodation Meeting scheduled, but Plaintiff did not attend because she was "[t]otally disabled." Id. ¶ 83; Cross Dep. at 111:16-20.

Plaintiff returned to work in the summer of 2011. Def.'s R.56 Stmt. ¶ 84. At that time, she took a position as a human resources specialist in the Labor Relationship division following a reduction in force that reduced the number of HRM specialists. Id. ¶ 86. The EEOC dismissed

7

Plaintiff's case on March 11, 2012 after she elected to proceed in federal court. Id. ¶ 87. In May 2012, all of the Postal Service employees at Broad St. were moved to the Kilmer facility. Id. ¶ 88. Plaintiff is now a Retail specialist working on a detail in the HRM Department out of Kilmer. Id. ¶ 89.

## II. PROCEDURAL HISTORY

On May 8, 2012, Plaintiff commenced this action, asserting discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act ("Title VII") and the Americans with Disabilities Act (the "ADA"), as well as a common law claim for retaliation. See Compl., Dkt. No. 1, at 3-6. In February 2013, Defendant moved to dismiss the retaliation and hostile work environment claims. See Def. Mem. in Support of Mot. to Dismiss, Dkt. No. 13 at 5-13.

On August 23, 2013, the Court granted the motion, holding that (1) the exclusive remedy for Plaintiff's claims was the Rehab Act; (2) Plaintiff did not exhaust her claims for retaliation or hostile work environment; (3) Plaintiff did not state a claim for retaliation or hostile work environment; and (4) Plaintiff could not seek punitive damages against the Postal Service. Cross v. Donohoe, No. 12-2670, 2013 WL 4518049, at *3-7 (D.N.J. Aug. 23, 2013) (Cecchi, J.).

Plaintiff subsequently filed an Amended Complaint on September 18, 2013. Dkt. No. 22. The Amended Complaint alleges four causes of action under the Rehab Act: (1) disparate treatment discrimination on the basis of disability; (2) failure to reasonably accommodate a disabled employee;[6] (3) retaliation; and (4) hostile work environment.

---

[6] While the Amended Complaint does not distinguish the failure to accommodate claim as a separate cause of action, the Rehab Act provides for disparate treatment and failure to accommodate as two distinct claims. Yunckes v. Chertoff, No. 05-5766, 2008 WL 577229, at *2 (D.N.J. Feb. 29, 2008). Because the Parties' submissions make reference to both theories of recovery, the Court will address both.

Defendant again moved to dismiss Plaintiff's retaliation and hostile work environment claims. Def.'s Mot. to Dismiss, Dkt. No. 68. On June 3, 2014, the Court granted Defendant's motion, holding that Plaintiff had not exhausted her administrative remedies, and that she had failed to state a claim for relief for either cause of action. Cross v. Donohoe, No. 12-2670, slip op. at 5-12 (D.N.J. June 3, 2014), Dkt. No. 33. The Court also granted Plaintiff thirty days to file a Second Amended Complaint. Id. at 12. She did not amend her complaint within thirty days. On July 22, 2014, her attorney moved to withdraw as counsel. See Mot. to Substitute at 103, Dkt. No. 34. Plaintiff was given an opportunity to seek new counsel. Dkt. No. 35. On April 20, 2015, the Court issued a scheduling order directing the parties to move to amend pleadings by May 20, 2015. Dkt. No. 43. Plaintiff, who was now proceeding pro se, did not move to amend.

Accordingly, two claims remain: (1) disparate treatment discrimination on the basis of disability; and (2) failure to reasonably accommodate a disabled employee. Defendant now seeks summary judgment on the remaining claims.

### III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

Where the Plaintiff is proceeding pro se, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (citing Haines v. Kemer, 404 U.S. 519, 520-21 (1972)).

## IV. ANALYSIS

Two claims remain at issue: (1) disparate treatment discrimination on the basis of disability, and (2) failure to accommodate Plaintiff's disability. Plaintiff alleges that these causes of action arise from the following instances: (1) when the Postal Service denied her request for a reasonable accommodation to work out of its Kilmer Road facility in Edison, New Jersey ("Kilmer") in or around June 2010; (2) when it denied her FMLA training opportunities in or around April 2010; (3) when it denied her repeated requests for cross training in or around May and June of 2010; and (4) when the Postal Service denied her request to serve on the NRP Team in or around April 2010. Am. Compl. ¶¶ 14-15; Vassallo Decl., Ex. C at US0050; Cross Dep. at 41:15-44:23, 125:1-21.

Defendant argues that these claims should be dismissed for two reasons. First, Plaintiff cannot sue based on conduct that took place before May 24, 2010 because she did not timely contact an EEO counselor as required by relevant regulations. Second, Plaintiff fails to establish a prima facie case of discrimination by not demonstrating she suffered an adverse employment action under circumstances that give rise to an inference of discrimination. The Court agrees.

### A. Plaintiff Failed to Timely Exhaust Claims Arising Before May 24, 2010

A plaintiff seeking relief under the Rehab Act must exhaust administrative remedies prior to filing suit." Campbell v. United States, 375 F. App'x 254, 258 (3d Cir. 2010); see also Smith v. Pallman, 420 F. App'x 208, 212-13 (3d Cir. 2011). To meet this requirement, the employee must comply with the steps set forth in 29 C.F.R. § 1614.105 et seq. See Smith, 420 F. App'x at

212-13; Fanciullo v. U.S. Postal Serv., No. 12-5467, 2013 WL 5467169, at *9 (D.N.J. Sept. 30, 2013).

First, an employee must initiate contact with a Counselor within 45 days of the allegedly discriminatory conduct; second, the employee must file a formal administrative complaint within 15 days of receiving a notice of right to sue letter from the agency; and third, the employee must either appeal the agency's final decision to the EEOC or file a civil action in federal district court within 90 days of receiving the decision. See 29 C.F.R. §§ 1614.105-09, 1614.401, 1614.407(a); Cross, 2013 WL 4518049, at *3.

Here, Plaintiff first contacted an EEO Counselor on July 8, 2010. See Vassallo Decl. Ex. A at US053; Cross Dep. at 138-139. As such, valid claims must have accrued on or after May 24, 2010 – 45 days before July 8, 2010. However, by Plaintiff's own admission, two allegedly discriminatory events occurred before May 24, 2010: (1) the denial of her request to be part of the NRP Team, and (2) the denial of her request to receive FMLA training, both of which occurred around April 2010. Vassallo Decl., Ex. C at US0050. Claims arising from these two incidences are therefore procedurally barred. The Court enters judgment in Defendant's favor on those claims.

Plaintiff's disparate treatment claim arising from the denial of her requests for cross-training, and her failure to accommodate claim arising from the denial of her request to work out of Kilmer are timely.

### B. Disparate Treatment Discrimination

Plaintiff's claims arising from the denial of her repeated requests for cross-training around May and June of 2010 are timely. Nonetheless, she has not sufficiently stated her claims for discrimination.

Plaintiff's Rehab Act claims are governed by the McDonnell Douglas burden-shifting framework. See Wishkin v. Potter, 476 F.3d 180, 185 ("the familiar framework established in McDonnell Douglas . . . for Title VII cases is equally applicable to discrimination claims under the Rehabilitation Act."); Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Under this framework, a plaintiff must first establish a prima facie case of unlawful action by the employer. McDonnell Douglas, 411 U.S. at 802.  "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'"  Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (quoting Duffy v. Paper Magic Grp., 265 F.3d 163, 167 (3d Cir. 2001)).

If the plaintiff meets this initial burden, the burden shifts to the defendant, who must articulate legitimate, non-discriminatory reasons for its employment decision.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).  This burden has been described as "'relatively light,'" and is deemed "satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason."  Burton, 707 F.3d at 426 (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)).

Once the employer meets its burden of articulating a legitimate, non-discriminatory reason, the burden again shifts to the employee to present evidence from which a factfinder could infer that the proffered reasons were pretextual.  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

To make a prima facie case for disparate treatment discrimination, an employee must allege: (1) that she has a disability, (2) she is otherwise qualified to perform the functions of her

job, with or without a reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. Gillette v. Donohoe, 622 Fed. App'x 178, 181 (3d Cir. 2015) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). Defendant does not dispute the first two elements, but argues that Plaintiff did not suffer an adverse employment action. Def. Mot. to Dismiss, at Dkt. No. 68.

An adverse employment action is one by an employer "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Jones v. SEPTA, 796 F.3d 323, 326 (3d Cir. 2015) (quoting Storey v. Burns Int'l Sec. Serv., 390 F.3d 760, 764 (3d Cir. 2004)) (internal quotation marks omitted); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with different responsibilities, or a decision causing a significant change in benefits — A tangible employment action in most cases inflicts direct economic harm."). Denial of training opportunities does not constitute an adverse employment action without evidence that the employee's "work suffered or that her advancement or earning potential was affected." Pagan v. Gonzalez, 430 F. App'x 170, 172 (3d Cir. 2011); see also Rogers v. Alternative Resources Corp., 440 F. Supp. 2d 366, 375 (D.N.J. 2006) ("disparity in . . . training" did not rise to the level of an adverse employment action where "[t]here is no evidence that a certain level of training was required for promotion, retention or other benefits.").

Here, the denial of Plaintiff's requests for cross-training does not constitute an adverse employment action. [7] Plaintiff acknowledges that she did not lose any pay as a result of the lack

---

[7] Although there is some dispute as to whether Plaintiff was denied cross-training, or merely failed to take advantage of cross-training opportunities, the discrepancy is immaterial because a denial would not constitute an adverse employment action.

13

of cross-training. Cross Dep. at 130:20-24. Her job responsibilities did not change in any way. Id. at 130:25-131:3. Although she contends that she "probably" "lost opportunities for better pay," id. at 130:20-24, Plaintiff has not set forth any evidence that she would have received such opportunities with cross-training. She does not identify specific positions that were available for employees who have completed the training. Rather, any cross-training would have resulted in lateral opportunities that "would have been at the same rate of pay as her HRM specialist position." Mortola Decl. ¶ 17. While Plaintiff has generally alleged that her supervisor "allowed others in this department opportunities to train in other areas of the Postal Service," Vassallo Decl., Ex. C at US0050, the mere fact that others received training opportunities does not amount to an adverse employment action without evidence that Plaintiff's work suffered, or that such training was necessary for advancement in status or pay. Pagan v. Holder, 741 F. Supp. 2d 687, 697 (D.N.J. 2010). Ultimately, Ms. Cross did not experience any changes in salary, benefits, or job responsibilities, and is still employed as an HRM specialist.

Moreover, the record does not contain any evidence from which a reasonable jury could find that denial of cross-training was tied to her disability. Plaintiff supports her claims of discrimination with speculation and generalizations. When asked why she believed she was discriminated against on the basis of her disability when she was denied cross-training, Plaintiff replied, "Nobody likes a hurt person. Nobody likes a person that complains about their disabilities . . . . Once they label you, they label you." Cross Dep. at 143:7-11. Plaintiff noted that her colleagues may have "picked up on" certain "emotional issues," which contributed to the denial of cross-training. Id. at 143:24-144:2.

Plaintiff cannot point to anything that was said to her by her supervisors or others that attribute Defendant's conduct to Plaintiff's disability. When asked if anything was said to her

14

about reasons her supervisor denied her cross-training, Plaintiff stated, "I don't think anything had to be said to me . . . . [S]he's feeling as though . . . I'm not physically disabled."[8] Id. at 144:9-21.

Despite Plaintiff's subjective feelings, such "speculations, generalities, and gut feelings, however genuine, do not permit an inference of discrimination to be drawn." Lane v. Sears Logistics Servs., Inc., No. 11-6157, 2014 WL 1301549, at *4 (D.N.J. Mar. 31, 2014); see also Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir. 1983) (a "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."). [9]

### C. Failure to Accommodate

The same McDonnell Douglas burden shifting framework applies to failure to accommodate claims brought under the Rehab Act. Yunckes v. Chertoff, No. 05-5766, 2008 WL 577229, at *5 (D.N.J. Feb. 29, 2008). Plaintiff's remaining claim is for failure to accommodate her request to work out of the Kilmer facility in June 2010. To establish a prima facie case of failure to accommodate, a plaintiff must show that (1) she has a disability; (2) that she is otherwise

---

[8] In addition, Plaintiff asserted at her deposition that she believes Defendant also denied cross-training opportunities on the basis of race. See Cross Dep. at 129-130. The Court does not address this claim because Plaintiff did not assert any racial discrimination claims under Title VII in her Amended Complaint. Nevertheless, any amendments to add allegations of racial discrimination would be futile. For the same reasons set forth above, the denial of cross-training was not an adverse employment action.

[9] Although Plaintiff appears to raise other instances of discrimination outside her Amended Complaint, they likewise do not constitute adverse employment actions. In her July 28, 2010 EEO Report, Plaintiff alleged an additional instance of discrimination: when she was "singl[ed] out to discuss [her] work in the office" on or around June 16, 2010, and (2) when her supervisor, Ms. Martolo, challenged her OWCP claim. Vassallo Decl., Ex. C at US0050. However, Plaintiff's Amended Complaint does not address this allegation. As such, defendants have not briefed the issue. To the extent that Plaintiff seeks to assert her discrimination claim on the basis of these incidents, Plaintiff has not made a prima facie showing that they constituted an adverse employment action. Discipline itself does not qualify as an adverse employment action unless it "effect[s] a material change in the terms or conditions of [the plaintiff's] employment." Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see also Deans v. Kennedy House, Inc., 587 F. App'x 731, 734 (3d Cir. 2014).

qualified to perform the essential functions of the job, with or without accommodation for the disability; and (3) that her employer refused to make reasonable accommodation for the disability. Hohider v. United Parcel Service, Inc. 574 F.3d 169, 186 (3d Cir. 2009).

"Reasonable accommodation" means measures such as "'job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification or equipment or devices, . . . and other similar accommodations for individuals with disabilities.'" Freeman v. Chertoff, 604 F. Supp. 2d 726, 734 (D.N.J. 2009) (quoting 42 U.S.C. § 12111(9)(B)). A plaintiff must "demonstrate what reasonable accommodations he or she contends the employer should have made." Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996). A plaintiff bears the initial burden to show that her "proposed accommodation is possible." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006).

Once a plaintiff has satisfied her burden, then the burden shifts to the defendant to demonstrate that the requested accommodation is "unreasonable or would cause an undue hardship." Id. "'Undue hardship' means an action requiring significant difficulty or expense, when considered in light of: (i) the nature and cost of the accommodation needed . . . ; (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation . . .; (iii) the overall financial resources of the covered entity; and (iv) the type of operation or operations of the covered entity . . . ." Freeman 604 F. Supp. 2d at 736 (citing 42 U.S.C. § 12111(10)).

Here, Plaintiff's sole request for an accommodation was to move to the Kilmer facility. There is no dispute that Plaintiff was disabled, and was qualified to perform the essential functions of her job. However, Defendant asserts that Plaintiff has failed to show that the request to work out of Kilmer was a reasonable accommodation for several reasons. The Court agrees.

16

Plaintiff has not demonstrated why a placement at Kilmer would have assisted her ability to perform the essential functions of her job. Plaintiff contends that during the course of her foot injury, she had trouble attaining a handicapped parking space that was close to the entrance, opening bathroom doors, and walking to and from the fax/copier/printer, and lifting heavy bins of documents. Yet, Plaintiff admits that the handicapped parking spaces at Kilmer and the non-handicapped parking spaces at Broad St. were about the same distance to the respective entrances at each facility. Id. at 106:9-14. Although Plaintiff struggled with the pressure on her foot to open bathroom doors, she testified that Kilmer did not have automatic openers for the bathrooms. See id. Likewise, Plaintiff does not provide any reasons why working out of the Kilmer facility would help ease her walking and lifting difficulties. At Broad St., she relied on a "great group of people," Cross Dep. at 91:9-11, to occasionally bring things to her from the copier, and to lift heavy boxes. But the Kilmer facility was devoid of other HRM colleagues who would be able to help her.

One benefit that Plaintiff would have received by moving to Kilmer is that her commute would have been shortened from 45 minutes to 15 minutes, during which she could not elevate her foot. See Cross dep. at 94, 104, 107. But shorter commutes are generally "not part of the work environment that an employer is required to reasonably accommodated." Parker v. Verizon, 309 F. App'x 551, 561 (3d Cir. 2009) (quotation omitted). Moreover, Plaintiff has not suggested that an extra hour of elevating her foot during the week would make a notable difference in her work. She does not mention that she was able to elevate her foot once she arrived at work.

In any event, Defendant has met its burden to provide legitimate, non-discriminatory reasons why working at Kilmer was not feasible in 2010. At the time, all HRM Specialists worked with paper files. If one HRM Specialist was out of the office, another HRM Specialist would need to access the paper files to process requests on time. The Postal Service would need to move

17

others—in addition to Plaintiff—to the Kilmer facility to ensure coverage if Plaintiff was out of the office. However, at the time of Plaintiff's request, there was no office space available at Kilmer for HRM use. It was refurbished before the Northern New Jersey HRM Department moved there in May 2012. As such, moving Plaintiff to the Kilmer facility would not have been a reasonable accommodation.

### III. CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment is **GRANTED**.

**Dated: September 6, 2016**

*/s Madeline Cox Arleo*_____
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**